CASE # CV52456
CAUSE: OTHER CONTRACT
STYLE: LEECO ENERGY & INVESTMENTS,     VS LEXINGTON INSURANCE COMPANY
       INC.

PLAINTIFF

NAME                                                  ATTORNEY

LEECO ENERGY & INVESTMENTS INC P              MCKEEHAN, STEWART
                                              617 E. 7TH STREET
                                              ODESSA, TEXAS 79761
   -    -                                     432-332-3156

DEFENDANT

NAME                                                  ATTORNEY

LEXINGTON INSURANCE COMPANY    D              JACKSON, TRACY L
333 GUADALUPE STREET                          4800 THREE ALLEN CENTER
                                              333 CLAY STREET
AUTIN, TEXAS 78701                            HOUSTON TX 77002
   -   -                                      713-659-5100


TRANSACTIONS FOR ALL PARTIES                    /  /      THRU   /  /

06/28/2016            F/PLAINTIFF'S ORIGINAL PETITION/CCC                    I    60
LEECO ENERGY & INV
06/28/2016            F/CIVIL CASE COVER SHEET/CCC                           I     1
LEECO ENERGY & INV
06/28/2016            DOCKET SHEET/CCC
LEECO ENERGY & INV
06/28/2016            FILING FEES/CCC                             280.00-
LEECO ENERGY & INV
06/29/2016            I/CITATION BY SERVING THE COMMISSIONER OF
LEXINGTON INSURANC    INSURANCE/RETURNED TO ATTORNEY/CCC
07/01/2016            REC'D FROM STEWART MCKEEHAN/IO             280.00
LEECO ENERGY & INV
07/21/2016            F/CITATION SERVED 07/20/2016/AC                        I     3
LEXINGTON INSURANC
08/15/2016            F/DEFENDANT'S ORIGINAL ANSWER/AC
LEXINGTON INSURANC

EXHIBIT
A

JUL-21-2016  12:02        STABLE PCT5                    Filed 7/21/2016 1:17:09 PM
CV52456                                                  Ross Bush
                                                         District Clerk

CITATION

**CLERK OF THE COURT**                  **ATTORNEY REQUESTING SERVICE:** Midland County, Texas
Ross Bush                               STEWART MCKEEHAN
District Clerk                          617 E. 7TH STREET              ABENY CHAVEZ
500 N. Loraine Street, Suite 300
Midland, Texas 79701                    ODESSA, TEXAS 79761

**THE STATE OF TEXAS**

**NOTICE TO LEXINGTON INSURANCE COMPANY:**

**"YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR
ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED
THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE
EXPIRATION OF TWENTY (20) DAYS AFTER YOU WERE SERVED THIS CITATION
AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU."**

TO:  **LEXINGTON INSURANCE COMPANY**

GREETINGS: You are commanded to appear by filing a written answer to the petition at or before
10:00 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof,
before the **238TH DISTRICT COURT** of Midland County, Texas, at the Courthouse in Midland,
Texas.

Said petition was filed on: **June 28th, 2016**

The file number of said suit being: **CV52456**

The style of the case is:

**LEECO ENERGY & INVESTMENTS, INC.**
**v.**
**LEXINGTON INSURANCE COMPANY**

A copy of **PLAINTIFF'S ORIGINAL PETITION** accompanies this citation.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** OF SAID COURT, at office in
Midland, Texas, on June 29th, 2016.



                                        ROSS BUSH
                                        DISTRICT CLERK
                                        MIDLAND COUNTY, TEXAS

                                        By: _____
                                            CRYSTAL CASTANEDA, Deputy

JUL-21-2016  12:03        CONSTABLE PCT5                      512 854 4228      P.04

**OFFICER'S RETURN**

CY52456            238TH DISTRICT COURT

**LEECO ENERGY & INVESTMENTS, INC.**
v.
**LEXINGTON INSURANCE COMPANY**

**ADDRESS FOR SERVICE:**
LEXINGTON INSURANCE COMPANY
BY SERVING THE TEXAS COMMISSIONER OF INSURANCE
70 PINE STREET
NEW YORK, NY 10270

Came to hand on the _____ day of _____, 20_____, at _____ o'clock ____.m., and
executed in _____ County, Texas by delivering to the within named defendant in person, a true
copy of this Citation together with the accompanying copy of the **PLAINTIFF'S ORIGINAL PETITION**, with the date
of delivery endorsed thereon, at the following time and places,
to-wit:

| Name | Date/Time | Place/Location |
|------|-----------|----------------|
|      |           |                |

NOT EXECUTED FOR THE FOLLOWING REASON: _____

The diligence used in finding said defendant being: _____

and the cause or failure to execute this process is: _____

And the information received as to the whereabouts of said defendant being: _____

Carlos B. Lopez
Constable Pct. 5, Travis County, Texas _____, Sheriff

**FEES FOR SERVICE $**_____         _____, County, Texas
    (Of Citation)

                                          By: _____, Deputy

**STATE OF TEXAS**
**COUNTY OF MIDLAND**
                          **VERIFICATION**
BEFORE ME, A Notary Public, on this day personally appeared _____ known to be the
person whose name is subscribed to the foregoing document and being by me first duly sworn, declared that the statements
therein contained are true and correct.  I am not a party to this lawsuit and have no interest in the outcome.

Given under my hand and seal of office this the _____ day of _____, 20____.

                                          _____
                                          NOTARY PUBLIC, STATE OF TEXAS

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the
return.  The return must either be verified or be signed under penalty of perjury.  A return signed under penalty of perjury
must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____, and my address
                    (First, Middle, Last)
Is _____.
      (Street, City, Zip)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
Executed in _____ County, State of _____, on the _____ day of _____ 20_____.

_____                    _____
Declarant/Authorized Process Server              (Id # & expiration of certification)

                                                            TOTAL P.04

| | | |
|---|---|---|
| Cause No.: CV52456 | {} | In the 238th District Court |
| | {} | MIDLAND County |
| Plaintiff: | {} | |
| LEECO ENERGY & INVESTMENTS INC | | |
| | | |
| Defendant: | | |
| LEXINGTON INSURANCE COMPANY | | |

### Officer's Return

Came to hand July 20, 2016 at 12:08 P.M. and executed in Travis County, Texas, on July 20, 2016 at 2:47 P.M. by delivering to LEXINGTON INSURANCE COMPANY by delivering to DAVID MATTAX Commissioner of Insurance, at 333 Guadalupe, Austin, Texas, 78701, by delivering to TISH WILHELM, designated agent for service for the Commissioner of Insurance, duplicate true copies of the citation together with accompanying duplicate copies of the Plaintiff's ORIGINAL petition.

Carlos B. Lopez,
Travis County Constable Precinct 5
Travis County, Texas

by: _____
Edd Curry, Deputy

**Civil Case Cover Sheet**

Filed 6/28/2016 11:10:09 AM
Ross Bush
District Clerk
Midland County, Texas
Crystal C. Contrado
CRYSTAL C. CASTANEDA

238th District Court   CV52456   Cause Number: CV52456

This civil Cover Sheet should be completed and filed with the original petition. The information should be the best available at the time of filing, understanding that the information may change before trial.

This information does not constitute a discovery request, response, or supplementation, and is not admissible at trial

**1. Styled** Leeco Energy & Investments, Inc.   v.   Lexington Insurance Company

Plaintiff   Defendant

**2. Indicate case type (check only one):**

| CONTRACT | INJURY OR DAMAGE | OTHER CIVIL | EMPLOYMENT |
|---|---|---|---|
| Debt/Contract | □ Assault/Battery (S016) | □ Administrative Appeal | □ Discrimination |
| □ Consumer/DTPA | □ Construction | □ Antitrust/Unfair Competition | □ Retaliation |
| □ Debt/contract | □ Defamation | □ Code Violations | □ Termination |
| □ Fraud/Misrepresentation | Malpractice | □ Foreign Judgment | □ Worker's Comp |
| □ Other Debt/Contract: | □ Accounting | □ Intellectual Property | □ Other Employment: |
| | □ Legal | □ Lawyer Discipline | |
| Foreclosure | □ Medical | □ Perpetuate Testimony | |
| □ Home Equity-Expedited | □ Other Professional | □ Securities/Stock | **RELATED TO CRIMINAL MATTERS** |
| □ Other foreclosure | Liability: | □ Tortuous Interference | □ Expunction |
| □ Franchise | | □ Other: | □ Judgment Nisi |
| ⊠ Insurance | □ Motor Vehicle Accident | | □ Non-Disclosure |
| □ Non-Competition | □ Premises | | □ Seizure/Forfeiture |
| □ Partnership | □ Product Liability | | □ Writ of habeas corpus – |
| □ Other Contract: | List Product: | | Pre-Indictment |
| | | **TAX** | □ Other: |
| **REAL PROPERTY** | □ Other Personal Injury or Damage: | □ Tax Appraisal | |
| □ Eminent domain/ Condemnation | | □ Tax Delinquency | |
| □ Partition | | □ Other Tax | |
| □ Quiet Title | | | |
| □ Trespass to Try Title | | | |
| □ Other Property: | | | |

**3. Indicate sub-topic, if relevant:**

| | | | |
|---|---|---|---|
| □ Attachment | □ Declaratory Judgment | □ Mandamus | □ Sequestration |
| □ Bill of Review | □ Garnishment | □ Post-Judgment | □ TRO/Injunction |
| □ Certiorari | □ Interpleader | □ Prejudgment Remedy | □ Turnover |
| □ Class Action | □ License | □ Receiver | |

**4. Has this case been previously filed, or is it related To a case previously filed, in this county, or in Another county or state?**
⊠ No
□ Yes, in this county: Court: _____ Cause #: _____
□ Yes, in another county or state: County: _____ State: _____ Cause #: _____

**5. Level of Discovery** □ Level 1   ⊠ Level 2   □ Level 3

| 6. Instrument Filed | 7. Instrument to be Issued | 8. Service Type |
|---|---|---|
| ⊠ Original Petition | ⊠ Citation | □ Sheriff □ Constable □ Certified Mail |
| □ Amended Petition | | □ Publication □ Posting □ None |
| □ Motion to Modify | | ⊠ Other Return to attorney |
| □ Motion to _____ | □ Precept | □ Secretary of State |
| □ Order to Set Hearing/ Notice of hearing | | □ Private Process Server |
| □ Order to Appear/Show-Cause | □ Show-Cause | **10. Person Completing Cover Sheet Is:** ⊠ Attorney for Plaintiff/Petitioner □ Self Represented |
| □ Temporary Restraining Order | □ TRO | Stewart McKeehan |
| | | Name |
| □ Other _____ | □ Other _____ | 617 E. 7th St. |
| | | Address |
| **9. Party to Serve** | | Odessa, TX 79761 |
| | | City/State/Zip |
| Commissioner of Insurance | | 432.332.3156   13700200 |
| Name | | Phone No.   State Bar No. |
| 333 Guadalupe Street | | |
| Address | | |
| Austin, Texas 78701 | | |
| City/State/Zip | | |

CV52456

Filed 6/28/2016 11:10:09 AM
Ross Bush
District Clerk
Midland County, Texas

| | |
|---|---|
| LEECO ENERGY & INVESTMENTS, INC. | § |
| | § IN THE DISTRICT COURT OF |
| v. | § MIDLAND COUNTY, TEXAS |
| | § 238th DISTRICT COURT |
| LEXINGTON INSURANCE COMPANY | § |

*Crystal C. Castañeda*

IN THE DISTRICT COURT OF
MIDLAND COUNTY, TEXAS
238th DISTRICT COURT

<u>PLAINTIFF'S ORIGINAL PETITION</u>

TO THE HONORABLE COURT:

Leeco Energy & Investments, Inc., the Plaintiff, complains of Lexington Insurance Company, the Defendant, and for cause of action shows:

1.

The Plaintiff pleads that discovery should be conducted in accordance with a discovery control plan under Civil Procedure Rule 190.3.

2.

The Plaintiff seeks monetary relief in an amount in excess of $1,000,000.00 in addition to other relief.

3.

The Plaintiff is a corporation organized and existing under the laws of the State of Texas, with its office and principal place of business in Ector County. The Defendant is a property and casualty insurance company, whose domicile is unknown but whose physical address in believed to be located in the State of New York. The Defendant is authorized to engage in the insurance business in Texas. The Defendant has no designated registered agent for service of process in Texas. Citation may be served on the Defendant by serving the Commissioner of Insurance for the State of Texas at 333 Guadalupe Street, Austin, Travis County, Texas. Venue is proper in this Court under §15.032, Texas Civil Practice & Remedies Code.

4.

On February 1, 2015, the Defendant issued its insurance policy (the "Policy") numbered 012944707 naming Joseph T. Ryerson & Son, Inc. ("Ryerson") as primary insured. The Policy term was for one year and insured real property owned by the Plaintiff, located at 8001 Groening Street, Odessa, Midland County, Texas (the "Property"), which Property is occupied by Ryerson as the tenant of the Plaintiff, under a written lease (the "Lease" dated November 5, 2012. Among other provisions, the Lease requires Ryerson to maintain an insurance policy on the Property, with such policy naming the Plaintiff as an additional insured. Although Ryerson and the Defendant failed to include the Plaintiff as an additional insured the Policy, the Policy does apparently name the Plaintiff as a loss payee.

As such, the Plaintiff has standing to assert the right to receive payment of covered losses under the Policy and to otherwise enforce its terms.

5.

The Policy insured the Property against certain risks including hail.  On or about June 12, 2015, during the Policy term, a hail storm caused extensive damage to the roof of the building owned by the Plaintiff and situated on the Property.  The coverage under the Policy was subject to monetary limits of $10,000,000.00, as shown by the Policy, a true copy of which is attached hereto as Exhibit "A."  As a result of the hail storm and the damage to the Property, Plaintiff has sustained a loss in the amount of $806,539.84, representing the reasonable and necessary cost of repairing the roof.

6.

On a date unknown to the Plaintiff, but believed to have been on or about January 28, 2016, Ryerson made a claim on the Policy, for the loss and damage to the roof on the Property.  On or about March 8, 2016, and despite the fact that all conditions precedent to the Defendant's obligation to pay the Plaintiff's losses under the Policy were performed or did occur, the Defendant failed and refused to pay the value of the Plaintiff's claim, causing the Plaintiff to suffer that loss together with other harm as described further in this petition.

7.

After having received notice of the Plaintiff's losses clearly covered by the Policy, as set out in the preceding paragraphs of this petition, the Defendant engaged in various unfair settlement practices, as enumerated and defined as unfair or deceptive in §541.060(a) of the Texas Insurance Code and Section 17.46(b) of the Texas Business and Commerce Code, including but not limited to the following:

a.   Misrepresenting material facts or the policy provisions relating to coverage of the Policy;

b.   Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Plaintiff's claim once the Defendant's liability became reasonably clear;

c.   Failing to provide promptly a reasonable explanation of the Defendant's basis for its denial of the Plaintiff's claim;

d.   Refusing to pay the claim without first conducting a reasonable investigation of the matter;

e.   Failing to affirm or deny coverage within a reasonable time.

Page -2-

These acts and omissions on the Defendant's part were done knowingly, that is with an actual awareness of the falsity, unfairness, or deception of the conduct described. Consequently, the Plaintiff requests that the trier of fact award the Plaintiff additional damages of up to three times the sum of actual damages suffered.

8.

From and after the time the Plaintiff's claim was presented to the Defendant, the Defendant's liability to pay the claim in accordance with the terms of the Policy was reasonably clear. Despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny payment of the Plaintiff's claim, the Defendant refused to accept the claim and pay the Plaintiff as the policy required. The Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear. Instead, the Defendant failed to conduct a reasonable, proper investigation of the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid paying a valid claim. Consequently, the Defendant breached its duty to deal fairly and in good faith with the Plaintiff. The Defendant's breach was a proximate cause of the losses, expenses, and damages suffered by the Plaintiff as more specifically described below. The breach of duty by the Defendant was aggravated by the kind of malice, fraud and gross negligence for which the law allows the imposition of exemplary damages. The Defendant's conduct involved an extreme degree of risk of potential harm to the Plaintiff or others and, despite the Defendant's being actually and subjectively aware of the risk involved, the Defendant proceeded with conscious indifference to the rights, safety, and welfare of the Plaintiff. The Plaintiff, therefore, seeks exemplary damages in an amount to be assessed by the trier of fact.

9.

Defendant's adjuster acknowledged receipt of the claim as of January 28, 2016. Although more than 60 days have elapsed from that date, the claim has not been paid by the Defendant. Thus, the Plaintiff is entitled to recover the additional sum of 18 percent per annum on the Plaintiff's damages as described herein from March 28, 2016 until the day before the judgment for the Plaintiff in this case is signed.

10.

The Defendant's conduct in this matter was the producing and proximate cause of Plaintiff's damage, both actual and exemplary.

11.

The Plaintiff requests further relief pursuant to the Declaratory Judgments Act, Chapter 37 of the Civil Practice and Remedies Code of Texas, for a declaration of the Defendant's obligation to pay the claim under the Policy. Specifically, the Defendant has

refused to pay the claim, contending that because of a provision in the Lease that allegedly requires the Plaintiff to repair the Property, that the Defendant has no liability under the Policy to pay a claim for the cost of the repairs.  The Plaintiff is a designated loss payee in the Policy, has an insurable interest in the Property by virtue of owning it, and the Lease requires Ryerson to provide insurance to cover the type of loss involved in the case. The Policy provides that coverage, and the Plaintiff is therefore entitled to a declaration that the Defendant is obligated by the Policy to pay the claim.

12.

Because of the conduct of the Defendant, the Plaintiff has been compelled to engage the services of an attorney to prosecute this action. The Plaintiff is entitled to recover a reasonable sum for the necessary services of the attorney in the preparation and trial of this action and for any appeals to the Court of Appeals or the Texas Supreme Court.

WHEREFORE, the Plaintiff requests that the Defendant be cited to appear and answer and, on final trial of this cause, the Plaintiff recover judgment against the Defendant for the following:

1. The sum of $806,539.84 as the benefits payable under the Policy for the covered loss;

2. Exemplary damages or enhanced damages as found by the trier of fact;

3. 18 percent per annum on the total amount of the Plaintiff's claim from March 28, 2016 until the day before the judgment is signed;

4. Declaratory relief as described above;

5. Attorney's fees;

6. Prejudgment and postjudgment interest as provided by law;

7. Costs of suit;

8. Such other and further relief to which the Plaintiff may be justly entitled.

Respectfully submitted,

STEWART McKEEHAN
ATTORNEY AT LAW, P.C.
617 E. 7th St.
Odessa, Texas  79761
(432) 332-3156 Telephone
(432) 332-3161 Telefax
stewart@smlawpc.com

By:   _____
      Stewart McKeehan
      State Bar No. 13700200

      ATTORNEY FOR PLAINTIFF

Page -5-

**LEXINGTON INSURANCE COMPANY**
Administrative offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

**MANUSCRIPT DOMESTIC PROPERTY POLICY
DECLARATIONS**

Policy Number:  012944707                    Renewal of:  012944707

*Item 1.*      Named Insured:      RYERSON HOLDING CORPORATION

            Address:           227 W. Monroe St., 27th Floor
                              CHICAGO, IL 60606

*Item 2.*      Policy Period:
            From: FEBRUARY 1, 2015         To: FEBRUARY 1, 2016
            (At 12:01 A.M. Standard Time at the address of the Named Insured shown above.)

*Item 3.*      Limit of Liability:
            (Maximum Limit of Liability in any one Occurrence)

*Item 4.*      Premium:
            Total Premium:              $ 881,192
            Minimum Earned Premium:   $ 220,298

*Item 5.*      Perils:
            All Risks of Direct Physical Loss or Damage including Flood, Earth Movement and
            Equipment Breakdown/Boiler & Machinery, including Business Interruption and, as
            further described in the policy form

*Item 6.*      Description of Property Covered:
            Real and Personal Property; Machinery and Equipment; Furniture & Fixtures;
            Improvements and Betterment's; Inventory; Stock; EDP Hardware, Media and Data;
            Extra Expense, Including Business Interruption and, as further described in the policy
            form


            Coinsurance:  N/A

*Item 7.*      Mortgagee Clause:  Loss, if any shall be payable to:
            N/A


*Item 8.*      Forms Attached:  See attached forms schedule

                                          _____
                                          Authorized Representative OR
                                          Countersignature (In states where applicable)

PR8370

FORMS SCHEDULE

Named Insured:      RYERSON HOLDING CORPORATION

Policy No.:      012944707                                    Effective Date:    02/01/2015

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| PR4225 | 07/13 | | ECONOMIC SANCTIONS ENDORSEMENT |
| | | A | ANTI-STACKING ENDORSEMENT |
| | | B | FOREIGN HIGH HAZARD WIND ZONES |
| | | C | FOREIGN HIGH HAZARD EQ ZONES |
| | | D | COVERAGE ENDORSEMENT |
| | | E | GLOBAL POLICY EXTENSION |
| | | F | PROTECTIVE SAFEGUARDS ENDT |
| | | G | ADDITIONAL TERMS & CONDITIONS |
| | | H | GENERAL CHANGE ENDORSEMENT |
| PR4266 | 11/13 | | TOTAL TERRORISM EXCLUSION |
| NMA2918 | 08/01 | | WAR AND TERRORISM EXCLUSION |
| PR8371 | 02/12 | | MANUSCRIPT DOMESTIC PROP TEXT |

DOCO18 (E.D. 12/87)

ENDORSEMENT

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.:   012944707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

ECONOMIC SANCTIONS ENDORSEMENT

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative
Countersignature (in states where
applicable)

PR4225

EXHIBIT "A" PAGE 003

ENDORSEMENT# A

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.:   01294707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE   COMPANY

---

ANTI-STACKING ENDORSEMENT

The following condition is added to the policy:

If this insurance and any other insurance issued to the insured by the Company or any entity that the Company controls, is controlled by or is under common control with applies to the same loss, claim, suit, occurrence, or accident, whichever is applicable, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy.

However, this condition does not apply to any other insurance issued to the insured by the Company or any entity that the Company controls, is controlled by or is under common control with which is specifically intended to be primary to, in excess of, or quota share with the policy to which this endorsement is attached.

All other terms and conditions of the policy remain the same.

_Erik P. Nill_

LEXDOC021
LX0404

Authorized Representative OR
Countersignature (in states where applicable)

EXHIBIT "A" PAGE 004

ENDORSEMENT# B

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.:  012944707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

---

FOREIGN HIGH HAZARD WIND ZONES

Anguilla, Antigua & Barbuda, Aruba, Australia (Northern coastline from Shark Bay (Western Australia) to Hervey Bay (Queensland), to 50 miles (80 km) inland), Bahamas, Banaba, Bangladesh (Entire Coastline to 50 miles (80 km) inland), Barbados, Bermuda, Belize, Borneo, British Virgin Islands, Burma (Myanmar) (Entire Coastline to 50 miles (80 km) inland), Caroline Islands, Cayman Islands, China (Entire Coastline to 50 miles (80 km) inland), Costa Rica, Curacao, Dominica, Dominican Republic, El Salvador, Fiji, Gilbert Islands, Grenada, Guadeloupe, Guam, Guatemala, Haiti, Honduras, Hong Kong, India (Entire coastline to 50 miles (80km) inland), Indonesia, Jamaica, Japan (Entire Coastline to 50 miles (80 km) inland), Kenya (Entire Coastline to 50 miles (80 km) inland), La Reunion Island, Macau, Madagascar, Marshall Islands, Martinique, Mauritius, Mexico (States of Baja California Sur, Campeche, Colima, Guerrero, Jalisco, Michoacán, Nayarit, Quintana Roo, Sinaloa, Tabasco, Tamaulipas, Veracruz and Yucatan to 50 miles (80 km) inland), Micronesia (Federated States of), Montserrat, Mozambique (Entire Coastline to 50 miles (80 km) inland), Naura, Netherlands Antilles (Special Municipalities of Kingdom of Netherlands in Caribbean), New Zealand, Northern Mariana Islands, Pakistan (Entire Coastline to 50 miles (80 km) inland), Palau Islands, Panama, Papua New Guinea, Philippines, Puerto Rico, Sint Maarten, Solomon Islands, South Korea (Entire Coastline to 50 miles (80 km) inland), Sri Lanka, St. Barthelemy, St. Kitts and Nevis, St. Lucia, St. Martin, St. Vincent and the Grenadines, Taiwan, Thailand (Entire Coastline to 50 miles (80 km) inland), Trinidad & Tobago, Turks & Caicos, US Virgin Islands (including St. Croix, St. Johns, St. Thomas), Vietnam (Entire Coastline to 50 miles (80 km) inland), Wake Island.

All other terms and conditions of the policy remain unchanged.

*Erik P. Mk*

LEXOOC021
LX0404

Authorized Representative OR
Countersignature (In states where applicable)

EXHIBIT "A" PAGE 005

ENDORSEMENT# C

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.: 01294-4707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

---

### FOREIGN HIGH HAZARD EARTHQUAKE ZONES

Afghanistan, Albania, Algeria, Anguilla, Antigua & Barbuda, Argentina (Provinces of Mendoza, Salta, San Miguel de Tucman, Santiago Estero, San Juan & San Rafael), Armenia, Aruba, Azerbaijan, Banaba, Bangladesh, Barbados, Bhutan, Bolivia, Bosnia-Herzegovina, British Virgin Islands, Bulgaria, Burma (Myanmar), Caroline Islands, Cayman Islands, Chile, China (Provinces of Gansu, Hebei, Henan, Liaoning, Ningxia, Qinghal, Shaanxi, Shandong, Shanxi, Sichuan, Tibet, Xinjiang & Yunnan, the Inner Mongolia Region, the municipality of Tianjin and the Capital of Beijing), Colombia, Costa Rica, Crete, Croatia, Cuba, Curacao, Cyprus, Dominica, Dominican Republic, Ecuador, El Salvador, France (Province of Cannes, Marseille, & Toulon), Georgia, Gilbert Islands, Greece, Grenada, Guam, Guadeloupe, Guatemala, Haiti, Honduras (Province of Tegucigalpa), Iceland, India, (States of Arunachal Pradesh, Assam, Bihar, Delhi, Gujarat, Haryana, Himachal Pradesh, Jammu and Kashmir, Manipur, Meghalaya, Mizoram, Nagaland, Punjab, Rajasthan, Sikkim, Tripura, Uttar Pradesh & Uttarakhand and the Union Territories of Chandigarh, Dadra and Nagar Haveli & Daman and Diu), Indonesia, Iran, Iraq, Israel, Italy (Provinces of Avellino, Catania, Catanzaro, Chieti, Cosenza, Foggia, Frosinone, L'Aquila, Messina, Potenza, Reggio Calabria, Siracusa, Udine), Jamaica, Japan, Kazakhstan, Kyrgyzstan, Macedonia, Marshall Islands, Martinique, Mexico (States of Baja California, Chiapas, Colima, Edo de Mexico, Federal District including Mexico City, Guerrero, Jalisco, Michoacán, Oaxaca, Sonora, Veracruz), Micronesia (Federated States of), Moldova, Monaco, Montenegro, Montserrat, Nauru, Nepal, Netherlands Antilles (Special Municipalities of Kingdom of Netherlands in Caribbean), New Zealand, Nicaragua, Northern Mariana Islands, Pakistan, Palau Islands, Panama, Papua New Guinea, Peru, Philippines, Puerto Rico, Romania, Serbia, Sint Maarten, Solomon Islands, St. Barthelemy, St. Kitts and Nevis, St. Lucia, St. Martin, St. Vincent and the Grenadines, Taiwan, Tajikistan, Trinidad & Tobago, Turkey, Turkmenistan, Turks & Caicos, US Virgin Islands (including St. Croix, St. Johns, St. Thomas), Uzbekistan, Venezuela, Wake Island.

All other terms and conditions of the policy remain unchanged.

*Eric P. Ull*

---

LEXDOC021
LX0404

Authorized  Representative OR
Countersignature (In states where applicable)

EXHIBIT "A" PAGE 006

ENDORSEMENT # D

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.:   012944707

Issued to:RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

FAIRS OR EXHIBITIONS

The following is added to SECTION VI – ADDITIONAL COVERAGES:

The Company will pay for direct physical loss or damage to the Insured's covered personal property
By a Covered Cause of Loss:

    a.        At fairs or exhibitions; or

    b.        In transit to or from fairs or exhibitions.

In the event that the sublimit applicable to this Additional Coverage and a sublimit applicable to
another Additional Coverage apply, the Company shall apply the higher sublimit to the loss or
damage

PERSONAL PROPERTY NOT AT A COVERED LOCATION

The following is added to SECTION VI - ADDITIONAL COVERAGES

The Company  will pay for direct  physical  loss  or damage  by a Covered  Cause  of Loss to
personal  property  of the type  insured:

a.  owned  by the  Insured; or

b.  property  of others in the Insured's care,  custody and control,  but only to the extent the
    Insured is legally liable for such personal property,

Not at a Insured location while:

a.  Temporarily at a location the Insured does not own, lease or operate; or

b.  In storage at a location the  Insured  leases, provided  the  lease  was  executed after  the
    beginning of the current  Policy period.

This Additional  Coverage does not apply to personal  property which at the time of such loss or
Damage is:

a.  In or on a vehicle; or

b.  In the  care, custody and control  of the  Insured's salespersons.

EXHIBIT "A" PAGE 007

In the event that the sublimit applicable to this Additional Coverage and a sublimit applicable to another Additional Coverage apply, the Company shall apply the higher sublimit to the loss or damage.

TAX TREATMENT OF PROFITS

The following is added to Global Policy Extension

This policy is extended to cover the additional time element loss sustained by the insured resulting from a peril covered by this policy in the event the tax treatment of

1. The profit portion of a loss recovery involving finished stock manufactured or purchased by the insured; and/or

2. The profits portion of time element loss proceeds;

   differs from the tax treatment of profits that would have been incurred had no direct physical damage to real and personal property and/or time element loss occurred.

Property in the Course of Construction and /or During Erection, Assembly and/or Installation

Soft Costs under Section V.C.4. Does not apply to Property under Construction

_Erik P. Mlk_

Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

EXHIBIT "A" PAGE 008

ENDORSEMENT#   E

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.:   012944707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON   INSURANCE COMPANY

---

### GLOBAL POLICY EXTENSION

DIFFERENCE IN CONDITIONS:

This Policy is extended to provide coverages, as indicated in the Insurance Agreement of this Policy, for the Named Insured's locations outside of the United States, Canada and Puerto Rico which are insured under existing primary and/or underlying property policies of insurance, in various countries within the territorial limits of this Policy.

This Policy is extended to cover:

1. The differences in definitions, perils, conditions or coverages between the primary and/or underlying policies and this Policy.

2. The difference between the Limits of Liability stated in the primary and/or underlying policies and this policy provided:

   a. Coverage is afforded under this Policy;

   b. Limits of Liability are exhausted under the primary and/or underlying policies;

      The Limits of Liability under this Policy are not in addition to those stated in the Primary and/or underlying policies and are the maximum amount recoverable for Such claim for loss or damage, unless stated elsewhere in this Policy,

   c. The deductible(s) applicable to such claim for loss or damage in the primary and/or underlying policies has been applied;

3. Any location insured under this Policy and within the territorial limits of this Policy not included in any primary and/or underling policies.

4. Property insured under primary and/or underlying policies being insured, coinsured and/or reinsured in whole or in part by this Company, or any of it's affiliated or agent companies where such primary and/or underlying coverage has unintentionally been canceled or has expired.

This Policy shall not cover to the extent that any other Insurance, whether prior or subsequent hereto and by whomsoever effected, affords the same coverage. The Insurance provided by this Policy shall not apply as contributing Insurance as respects loss arising from perils insured against under any other insurance, nor shall any deductible amount or any financial loss sustained by the insured resulting from the application of a coinsurance or average clause under such other Insurance be recoverable under this Policy.

The coverage afforded under this Policy will apply excess of the amount recoverable from such

LEXDOC021
LX0404

### EXHIBIT "A" PAGE 009

ENDORSEMENT#   E
(Continued)

other Insurance subject to applicable policy limits

It Is agreed that during the term of this Policy the Insured will not cancel or restrict or allow to expire and not renew without the knowledge and consent of the Company, any other Insurance In force at the time coverage hereunder attaches, which covers the same risk(s) as covered hereunder. If any of the existing Insurance is canceled, restricted or allowed to expire and not renewed without the knowledge and consent of the Company, this coverage will continue to apply as though such local Insurance has been maintained in full force and effect.

This company shall not be liable for non-recovery under primary Insurance due to Insolvency and/or other financial failure of such primary insurer except where the insurer providing the primary insurance Is a subsidiary or affiliate of the Company.

It is further agreed that any coverages provided in the underlying policies that are not provided in this policy are not intended to extend to this Policy.

OCCURRENCE LIMIT

In the event an occurrence results in liability payable under more than one policy issued to the Named Insured being Insured, coinsured and/or reinsured in whole or in part by the Company or any of its affiliated or agent companies, the maximum amount payable In the aggregate under all such policies shall be the applicable limits of liability Indicated In this Policy regardless of the number of coverages, locations or perils involved.

DEDUCTIBLE

Should the amount of loss payable under the Insured's primary insurance provided by Company subsidiaries and/or affiliates, or non-Company entities If arranged by the Company, exceed the largest applicable deductible of this policy, then no deductible shall apply hereunder. However, if the amount to be paid under the insured's primary Insurance Is less than the largest applicable deductible of this policy, then the amount to be deducted hereunder shall not exceed the difference between the amount to be deducted under the Insured's primary Insurance and the largest applicable deductible of this policy.

CURRENCY

Any amount of money specified in the policy, Including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the United States of America

CURRENCY CONVERSION

It is agreed that settlement under this Policy shall be in United States dollars. Alternatively, where requested by the insured and allowable by applicable laws, settlement will be In the currency of the country In which the property is located.

Loss payment under this Policy will not be made until payment under any primary and/or underlying policy has been exhausted.

In the event of a loss adjustment Involving currency conversion, the foreign exchange selling rate used for the purpose of application of deductible and application of limit will be that foreign exchange selling rate published In the Wall Street Journal on the date of the loss. The foreign exchange selling rate used for settlement of the loss will be that foreign exchange selling rate

LEXDOC021
LX0404

EXHIBIT "A" PAGE 010

ENDORSEMENT# E
(Continued)

Published in the Wall street Journal on the date of settlement.

If the loss adjustment of any property loss, or any part thereof, is based upon the cost of replacement or reconditioning and involves currency conversation, the foreign exchange selling rate published in the Wall Street Journal on the date the replacement or reconditioning cost is incurred will apply.

In the event of a Time Element Loss Settlement Involving currency conversion, the foreign exchange selling rate used for settlement of loss will be the average of those foreign exchange selling rate published in the Wall Street Journal during each thirty (30) consecutive day period that the actual loss is incurred.

If the foreign exchange selling rate was not published on the stipulated date, the prior most recently published date issue shall be used.


JURISDICTION

This policy shall be governed by United States Law and any disputes arising hereunder shall be exclusively subject to United States Jurisdiction. Loss payment under this Policy will not be made until payment under any Primary and/or Underlying policy has been exhausted.


PRIMARY AND/OR UNDERLYING POLICIES:

As referred to in this Policy, a primary and/or underlying policy is the first policy of property insurance to respond to a claim in the event of property loss or damage.

Permission is granted the Insured to purchase specific underlying insurance on property covered by this Policy against all or any of the perils insured against by this Policy and in compliance with the laws, regulations, and/or customs of the country In which the property is located. The existence of such underlying Insurance shall not prejudice or affect any recovery otherwise payable under this policy,

It is further agreed that such underlying policies are not to be considered as additional insurance and that any coverages provided in the underlying policies that are not provided in this Policy are not intended to extend to this policy.


RECOVERY FROM OTHER PARTIES AND/OR INSURANCE OR OTHER COMPENSATION PLANS:

No loss or part of a loss shall be paid or made good hereunder to the extent the Insured has Collected such loss from others.

Notwithstanding anything in this Policy or in any extensions thereto, it is agreed that this Policy does not cover loss, destruction, or damage otherwise recoverable under any government or natural catastrophe insurance or other compensation plan. This Policy will apply only for the difference between the recovery received under any government or natural catastrophe insurance or other compensation plan and the amount normally payable under this Policy.


STATUTES

If any of the articles of this Policy conflict with the laws or statutes of any jurisdictions In which this Policy applies, this Policy is amended to conform with such laws or statutes.


LEXDOC021
LX0404


EXHIBIT "A" PAGE 011

ENDORSEMENT# E
(Continued)

TERRITORIAL LIMITATIONS

This policy covers worldwide, except for
Afghanistan, Albania, Angola, Belarus, Bosnia-Herzegovina, Burma (Myanmar), Congo (The Democratic Republic of Congo or formally known as Zaire), Croatia, Cuba, El Salvador, Haiti, Iran, Iraq, Ivory Coast, Kosovo, Laos, Lebanon, Liberia, Libya, Macedonia, Montenegro, Nicaragua, North Korea, Pakistan, Republic of South Sudan, Serbia, Slovenia, Somalia, Sudan, Syria, and Zimbabwe;

Furthermore, and notwithstanding the definition of coverage territory or anything else to the contrary no matter where located, If coverage for a claim under this policy Is In violation of any applicable economic, trade or other sanction or law, Including without
Limitation any sanction administered or enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim shall be null and void.

COINSURANCE DEFICIENCY

This Policy Is extended to cover the actual loss sustained by the Insured resulting from the application of a Coinsurance or Average Clause forming part of any locally written, admitted primary and/or underlying insurance policy effected by the Insured, as a result of unintentional underinsurance.

If, after determination of the amount of loss under such a local admitted primary and/or underlying insurance, the Insured shall be unable to collect the same In full as the result of the application of a Coinsurance or Average Clause, this Policy shall pay the difference between the amount recoverable under the local admitted primary and/or underlying insurance and the total amount of the loss, but no more than the limit of the local policy or the limit of liability under this Policy, whichever Is less. In no event shall the liability of the Company under this section exceed $.

In no event shall coverage under this extension be excess over the limits of local admitted policies. No liability shall attach under this extension if the Insured shall be unable to recover in full any loss under local admitted Insurance should the inability to effect such recovery result from Intentional underinsurance on the part of the insured.

Payment made hereunder shall be subject to the Sublimit of liability, if any, specified elsewhere in this Policy.

DEVALUATION

This Policy Is extended to cover any deficiency In the amount of collectible Loss under a primary insurance policy caused by the devaluation of the currency in which it is written. However, the insured agrees to adjust the limits and values on such primary insurance to correct such deficiencies within 45 days after the date of the currency's devaluation. In no event shall the Liability of the Company under this section exceed $.

TAX LIABILITY

In the event that a loss covered hereunder cannot be paid in the country where the loss insured under this Policy has Incurred, this Company shall be liable for an additional loss payment in accordance with the following formula:

Loss payment due under this section $= C - A - C$ defined as:
$$B$$

LEXOOC021
LX0404

EXHIBIT "A" PAGE 012

ENDORSEMENT#  E
(Continued)

A. Local tax benefit received where the loss occurred.
B. 1 minus the effective tax rate in the country where loss payments are received. The tax
   rate shall be the corporate tax rate in effect for the fiscal year the loss occurred.
C. Actual loss otherwise payable under this policy, except for the operation of this clause.

Should the effective local tax rate where the loss occurs be equal to or greater than the effective
tax rate in the country where the loss payments are to be received, then the formula stated above
shall not apply. The tax rates applicable shall be the respective corporate tax rates in effect for
the fiscal year when the loss occurred.

The tax rates referred to in this section shall be the respective corporate tax rates in effect at the
date of loss.

In no event shall the liability of the Company under this section exceed $.

TENANTS AND NEIGHBORS LIABILITY

The liability, which the insured incurs as a tenant under the articles of any civil or commercial code,
because of damage to real or personal property by a peril insured against;

The liability, which the insured incurs under the articles of any civil or commercial code, for damage
to real or personal property from a peril spreading from the insured's premises to the premises of
neighbors and cotenants;

The liability, which the insured incurs as landlord under the articles of any civil or commercial code,
for damage to the personal property of tenants by a peril insured against as a result of
constructional defects or lack of maintenance.

In no event shall the liability of the Company under this section exceed $.

The extension applies only to liability incurred in those countries in which a Napoleonic or other civil or
commercial code applies due to loss or damage by a peril as defined by such code and as insured
hereunder.

PERILS EXCLUDED

LEXDOC021
LX0404

1. Against loss in Spain or Spanish Territories which fall under the regulation of the"Consorcio de Compensacion de Seguros ("Consorcio"), and are declared by the "Consorcio" to be within the conditions of its coverage, but only to the extent of recovery thereunder. (Conditions of payment or delays in payment by the "Consorcio" shall not abrogate this exclusion); nor against any event constituting a Calimidad Nacional.

2. Against loss in France or French Territories which fall under French Law  82-600 of July 13, 1982 and are declared a disaster pursuant to said law by the French government in the "Official Journal" of the French Republic, but only to the extent of recovery thereunder.  (Conditions of payment or delays in payment shall not abrogate this exclusion).  Nor against all material damage and consequential loss arising as a result of all perils indemnifiable in terms of the scope of cover granted by GAREAT.

3. Against loss or damage in Bundeslaender and Hansestaedte (states) of Schleswig-Holstein, Niedersachsen, Mecklenburg-Vorpommerm, Bremen, and Hamburg in Germany caused by storm surge, as declared by the Federal German Office for Maritime Shipping and Hydrographics.

4. Against loss or damage in South Africa caused directly or indirectly by or through or in consequence of any occurrence for which a fund has been established in terms of the War Damage Insurance and Compensation Act, 1976 (No.  85 of 1976) but only to the extent of recovery thereunder.

5. Against loss or damage caused by an act of terrorism, occurring in the United  Kingdom and as declared by the Association of British Insurers Pool  Re.

6. Against loss or damage in the Netherlands caused by flood or the damage, destruction or overflowing of dams, dikes, floodgates and other similar ways, whether or not the flood resulting is due to a peril covered under this policy.

7. Against loss or damage covered under Norsk Naturskadepol in Norway; as set fourth in the Insurance Contract Act of June 16, 1989 but only to the extent of recovery thereunder.

8. Against loss or damage caused by an act of terrorism occurring outside of the United States of America as per NMA 2918.

All other terms and conditions of the policy remain unchanged.

_Erik P. Nll_

Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

EXHIBIT "A" PAGE 014

ENDORSEMENT# F

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.:  012944707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

PROTECTIVE SAFEGUARDS ENDORSEMENT

This endorsement modifies insurance provided by the policy:

No coverage shall be provided under this policy with respect to the perils of fire and smoke, if prior to the loss or damage, the insured fails to maintain the protective safeguard defined below with respect to the insured location at 3399 Francis Hughes, Laval, Canada:

Automatic sprinkler systems and central station monitoring.  In addition, adequate building temperature if need to ensure proper operation automatic sprinkler protection.

All other terms and conditions of the policy remain the same.

Authorized Representative OR
Countersignature (in states where applicable)

EXHIBIT "A" PAGE 015

ENDORSEMENT# G

This endorsement, effective 12:01 AM 02/01/2015

Forms a part of policy no.: 012944707

Issued to:RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

In consideration of the premium charged, it is understood and agreed that the following additional terms and conditions shall hereby be made a part of this policy.

1. Valuation for Vacant Properties: On buildings and structures, at the actual cash value or the cost to repair, whichever is less. The actual cash value is agreed to be replacement cost new less physical depreciation. This will not apply to the Laval, Canada location subject to fixed protection remaining in service.

2. It is agreed that only following locations are considered to be Special Flood Hazard Areas (SFHA), areas of 100-year flooding, as defined by the Federal Emergency Management Agency (FEMA):

    7930 Sw Hunziker St, Portland, OR 97223
    951 Trails Rd, Eldridge, IA 52748
    360 S Royal St., Mobile, AL 36603
    363 S Royal St., Mobile, AL 36603
    515 S Royal St., Mobile, AL 36603
    701 S Royal St., Mobile, AL 36603
    5026 N county Rd 1015, Blytheville, AR 72315

    10445 Airline Hwy, Saint Rose, LA 70087
    514 W Pickett Cir, Salt Lake City, UT 84115
    1605 North Hwy 169, Plymouth, MN 55441
    No 1 Fuxing Rd, Shuang Sha Industrial District, Guangzhou, China 510725
    No 9 Yuan Shan Road, Kunshan High-Tech Industrial Zone, Kunshan, Jiangsu,
    PRC No 238 Chenfeng Rd, KSND, Kunshan, Jiangsu, China, PRC 2153000 Loc 3
    No 111 TaiFeng Rd, Tianjin Economy Dev Zone, Tianjin, China
    200 Rue ou Cheminot, Vaudreuil, QC, J7V5V5 Canada

All other terms and conditions of policy remain unchanged.

Authorized Representative OR
Countersignature(In states where applicable)

PRB371 (02/12)

ENDORSEMENT #H

This endorsement, effective 12:01A.M. 02/01/2015
Forms a part of Policy No.: 012944707
Issued to: RYERSON HOLDING CORPOATION
By: LEXINGTON INSURANCE COMPANY

GENERAL CHANGE ENDORSEMENT
TO FORM PR8371 MANUSCRIPT DOMESTIC PROPERTY POLICY

NOTE: Terms that are bolded in this General Change Endorsement are defined in the Policy or this Endorsement.

This endorsement modifies insurance provided by the Policy as follows:

1. CONTINGENT TIME ELEMENT – DIRECT AND TIER 2 applies exclusively to the following locations; Eldridge, Iowa and Mobile, Alabama

   Subparagraph E.7. to SECTION I-COVERAGES AND LIMITS OF LIABILITY is deleted in its entirety. Subparagraph C.5 to Section V-TIME ELEMENT COVERAGE is deleted in its entirety and replaced with the following:

5. CONTINGENT TIME ELEMENT:  If direct physical loss or damage to the real or personal property of: (1) the Insured's **direct supplier** or the Insured's **Tier 2 supplier** or (2) the Insured's **direct customer** or the Insured's **Tier 2 customer**, is damaged by a Covered Cause of Loss under this Policy, and such damage:

   a. wholly or partially prevents the Insured's **direct supplier** from supplying their goods and/or services to the Insured, or

   b. wholly or partially prevents the Insured's **direct customer** from accepting the Insured's goods and/or services;

   then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property. The property of any supplier or any customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

   Notwithstanding the foregoing, this Additional Time Element Coverage does not apply to:

   a. Any supplier of electricity, gas, fuel, steam, water, refrigeration, telecommunications or sewerage service, or

   b. The Insured's customers, if the Insured is a supplier of electricity, gas, fuel, steam, water, refrigeration, telecommunications or sewerage service.

   The following definitions apply to this coverage:

a. **Direct supplier** means a supplier that supplies products or services directly to the Insured.

b. **Tier 2 supplier** means a supplier that supplies products or services directly to the Insured's **direct Supplier.**

c. **Direct customer** means a customer that receives products or services directly from the Insured.

d. **Tier 2 customer** means a customer that receives products or services directly from the Insured's direct **Customer.**

With respect to direct suppliers or direct customers, the Company's total liability for any one **Occurrence** will not exceed the Sublimit of Liability of $5,000,000.

With respect to **Tier 2 suppliers** or **Tier 2 customers,** the Company's total liability for any one **Occurrence** will not exceed the Sublimit of Liability of $2,500,000.

All other terms and conditions of the policy remain unchanged.

LEXDOC021
LX0404

Authorized Representative OR
Countersignature(In states where applicable)

MANUSCRIPT DOMESTIC PROPERTY POLICY

### SECTION I – COVERAGES AND LIMITS OF LIABILITY

Terms which appear in boldface type have special meaning.  See Section VIII. POLICY DEFINITIONS.

A.  NAMED INSURED:  First Named Insured and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is legally obligated to insure.

B.  MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSUREDS:  Per Certificates on File with the Company.

C.  COVERAGE TERRITORY:  Coverage under this Policy applies to Occurrences within the United States, its territories and possessions, Puerto Rico, and Canada, including their respective coastal waters.

D.  LIMIT OF LIABILITY ("Policy Limit"):  This Company's maximum liability in any one Occurrence as a result of all covered loss or damage regardless of the number of Locations, coverages, or perils insured under this Policy shall not exceed:

　　　$250,000,000

E.  SUBLIMITS OF LIABILITY:  Sublimits of Liability stated below are subject to and not in addition to the Policy Limit shown in Paragraph D., above.  These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per Occurrence unless otherwise indicated.

**If the words, NOT COVERED are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.**

1.  Earth Movement:

　　a.  $100,000,000　　Annual Aggregate

　　Subject to the Annual Aggregate Limit for all Earth Movement shown in Subparagraph E.1.a. above:

　　b.  $10,000,000　　Annual Aggregate for all Earth Movement in all of the following states combined: **California, Alaska, Hawaii, and/or Puerto Rico**

　　c.  $25,000,000　　Annual Aggregate for **Pacific Northwest Earthquake Zone Counties** (See Section VIII – Policy Definitions, Subparagraph E.1.)

　　　　　　　The Per Occurrence and Annual Aggregate Limit for the Peril of Earth Movement shall not exceed $100,000,000.
　　d.  $50,000,000　　Annual Aggregate for **New Madrid Earthquake Zone Counties** (See Section VIII – Policy Definitions, Subparagraph E.2.)

　　　　　　　The Per Occurrence and Annual Aggregate Limit for the Peril of Earth Movement shall not exceed $100,000,000.

　　e.  $50,000,000　　Annual Aggregate for the peril of Earth Movement in Canada

PR8371 (02/12)　　　　　　　Page 1 of 33

EXHIBIT "A" PAGE 019

The Per Occurrence and Annual Aggregate Limit for the Peril of Earth Movement shall not exceed $100,000,000.

f.  $10,000,000    Annual Aggregate for the peril of **Earth Movement in China**

The Per Occurrence and Annual Aggregate Limit for the Peril of Earth Movement shall not exceed $100,000,000.

g.  $10,000,000    Annual Aggregate for the peril of **Earth Movement in Mexico**

The Per Occurrence and Annual Aggregate Limit for the Peril of Earth Movement shall not exceed $100,000,000.

2. **Flood:**

a.  $100,000,000    Annual Aggregate

b.  $10,000,000    Subject to the Annual Aggregate for the peril of **Flood occurring wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-Year Flooding,** as defined by the Federal Emergency Management Agency (if these locations are not excluded elsewhere in this policy with respect to the peril of flood).

The Per Occurrence and Annual Aggregate Limit for the Peril of Flood shall not exceed $100,000,000.

c.  $10,000,000    Annual Aggregate for the peril of **Flood occurring in Mexico**

The Per Occurrence and Annual Aggregate Limit for the Peril of Flood shall not exceed $100,000,000.

d.  $10,000,000    Annual Aggregate for the peril of **Flood occurring in China**

The Per Occurrence and Annual Aggregate Limit for the Peril of Flood shall not exceed $100,000,000.

3. **Named Storm:**    $100,000,000 (a storm that has been declared by the National Weather service or other Worldwide Recognized Meteorological Authority to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm or Tropical Depression), regardless of the number of Coverages, **Locations** or Perils involved (including but not limited to, all **Flood** (however caused), wind, wind gusts, storm surges, tornados, cyclones, hail, or rain). In the event covered Loss or Damage by Flood arises out of a Named Storm, the maximum amount the company will pay per Occurrence for all such Loss or Damage by Flood shall be the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Named storm shall exclude Loss or Damage by Flood.

4. **Debris Removal:** The Company's total liability for Debris Removal per **Occurrence** for all Insured **Locations** sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

a.  25% of the amount of covered direct physical loss or damage payable for all Insured **Locations;** or

b.  $10,000,000

5. Accounts Receivable:        $10,000,000

| | | |
|---|---|---|
| 6. | Civil or Military Authority: | **30** Days, but in no event will the Company pay more than $25,000,000. Insured physical loss or damage must occur within one (1) statute mile from the Insured's premises in order for coverage to apply. |
| 7. | Coinsurance Deficiency: | $10,000,000 |
| 8. | Contingent Time Element: | $5,000,000 Per Occurrence for **Contingent Time Element Tier 1 and Tier 2** at the following locations; **Eldridge, Iowa and Mobile, Alabama** but, limited to $2,500,000 for Contingent Extra Expense at the Eldridge, Iowa and Mobile, Alabama locations |
| 9. | Contingent Extra Expense as Respects Tier 1 Suppliers or Customers: | $2,500,000 (a supplier or customer with a direct contractual relationship with the insured of the insured) |
| 10. | Currency Devaluation: | $10,000,000 |

11. Demolition & Increased Cost of Construction: (See Section VI – Additional Coverages, Paragraph C.)

| | | |
|---|---|---|
| | a. Demolition Coverage A: | **INCLUDED** |
| | b. Demolition Coverage B: | $25,000,000 |
| | c. Demolition Coverage C: | $25,000,000 |

| | | |
|---|---|---|
| 12. | Difference in Condition: | $10,286,746 (for locations covered under local underlying polices in **Mexico** on file with the company) |
| 13. | Difference in Condition: | $72,157,247 (for location covered under local underlying polices in **China** on file with the company) |
| 14. | Electronic Data and Media: | $10,000,000 |
| 15. | Equipment Breakdown: | $100,000,000 |
| 16. | Spoilage: | $1,000,000 |
| 17. | Errors and Omissions: | $25,000,000, Subject to all other sublimits contained herein. |
| 18. | Extended Period of Indemnity: | **60 Days** |
| 19. | Extra Expense: | $50,000,000 |
| 20. | Fine Arts: | $10,000,000 |
| 21. | Fire Brigade Charges: | $25,000 |
| 22. | Land and Water Decontamination and Clean Up Expense: | $250,000 |
| 23. | Ingress/Egress Coverage: | **30** Days, but in no event will the Company pay more than $25,000,000. Insured physical loss or damage must occur within one (1) statute mile from the Insured's premises in order for coverage to apply. |

| | |
|---|---|
| 24. Leasehold Interest: | $10,000,000 |
| 25. Limited Pollution Coverage: | $250,000 Annual Aggregate |
| 26. Miscellaneous Unnamed Locations: | $10,000,000, Subject to all other sublimits contained herein. |
| 27. Miscellaneous Personal Property: | $10,000,000 |
| 28. Mold / Fungus Resultant Damage: | $250,000 (coverage for ensuing mold / fungus as a result of a covered peril) |
| 29. Newly Acquired Property: | 90 Days, but in no event will the Company pay more than $10,000,000, if not reported to the Company in that 90 days period then coverage reverts to MUL |
| 30. Ordinary Payroll: | 180 Days at the following locations; Eldrige, Iowa  and Mobile, Alabama |
| 31. Professional Fees: | $250,000 |
| 32. Rental Income | $648,000 at the following location; 5480 Windfern Road Houston, TX |
| 33. Service Interruption: | $25,000,000, |
| 34. Tax Liability: | $10,000,000 |
| 35. Tax Treatment of Profits: | $10,000,000 |
| 36. Tenants and Neighbors Liability: | $10,000,000 |
| 37. Transit: | $1,000,000        Per Conveyance<br>$10,000,000      Per Occurrence |
| 38. Valuable Papers and Records: | $10,000,000 |
| 39. Expediting Expense: | $1,000,000 |
| 40.  Business Interruption: | Covered at the following locations;<br>12,797,741 Eldridge, Iowa<br>5,693,192   Mobile, Alabama |
| 41. Soft Costs: | $2,500,000 |
| 42. Rental Value: | $1,000,000 |
| 43. Royalties: | $5,000,000 |
| 44. Exhibition and Trade Shows: | $10,000,000 |
| 45. Property in the Course of Construction and /or During Erection, Assembly and/or Installation Excluding Soft Costs: | $10,000,000 |

F. **MAXIMUM AMOUNT PAYABLE:**   In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s),

2. As respects each **Location** insured by this Policy, <u>NOT APPLICABLE</u> of the total combined stated values for all categories of Insured Property (e.g. building, contents) and other covered exposures (e.g., time element, extra expense, rental loss) shown for that **Location** on the latest Statement of Values or other documentation on file with the Company, or

3. The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

G. **DEDUCTIBLE:**   Each claim for loss or damage under this Policy shall be subject to a per Occurrence deductible amount of $100,000, unless a specific deductible shown below applies:

1. Flood:

   a. $100,000 Per Occurrence, except as follows in Subparagraph G.1.b.:

   b. 5% of Total Insurable Values (TIV) at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of $1,000,000 any one **Occurrence** as respects **Locations** wholly or partially within **Special Flood Hazard Areas (SFHA), areas of 100-year flooding** as defined by the Federal Emergency Management Agency (FEMA),

   c. 5% of Total Insurable Values at the time of the loss at each involved in the loss or damage, subject to a minimum of $500,000 any one occurrence, as respects locations in the **Mexico**

   d. 5% of Total Insurable Values at the time of the loss at each location involved in the loss or damage, subject to a minimum of $1,000,000 any one occurrence, as respects location in **China.**

2. Earth Movement:

   a. $100,000   Per Occurrence, except as follows in Subparagraph G.2.b, G.2.c., or G.2.d.:

   b. 5% of Total Insurable Values at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of $250,000 any one **Occurrence** as respects **Locations in California, Hawaii, Alaska, and Puerto Rico;**

   c. 2% of Total Insurable Values at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of $100,000 any one **Occurrence** as respects **Locations in the Pacific Northwest Earthquake Zone Counties** (See Section VIII – Policy Definitions, Subparagraph E.1.);

   d. 2% of Total Insurable Values at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of $100,000 any one **Occurrence** as respects **Locations in the New Madrid Earthquake Zone Counties** (See Section VIII – Policy Definitions, Subparagraph E.2.

   e. 5% of Total Insurable Values at the time of the loss at each location involved in the loss or damage, subject to a minimum of $250,000 any one occurrence, as respects location in the **Foreign High Hazard Earthquake Zones.**

3. Windstorm or Hail:

    a. $100,000 Per Occurrence except as follows in Subparagraph G.3.b.:

    b. 5% of Total Insurable Values at the time of the loss at each Location involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service or other Worldwide Recognized Meteorological Authority to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression), regardless of the number of Coverages, Locations or Perils involved (including, but not limited to, all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail, or rain) and subject to a minimum deductible of $250,000 any one occurrence.

4. Equipment Breakdown:

    a. $100,000 per occurrence

5. If two or more deductible amounts provided in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in the policy. However, if:

    a. The Time Element deductible and another deductible apply to a single Occurrence, then the Company shall apply both deductibles to the Occurrence; and

    b. Covered Loss or Damage by Flood arises out of a Named Storm, then the Company shall apply the Flood deductible or the Named Storm deductible, whichever is greater.


The following two paragraphs apply to Subparagraphs G.1. through G.4, inclusive:

In each case of loss or damage covered by this Policy, the Company shall not be liable unless the Insured sustains loss or damage in a single Occurrence greater than any applicable deductible described herein and then, if this is a quota share Policy, only for the Company's share in excess of such deductible. When this Policy covers more than one Location, the deductible shall apply against the total loss or damage covered by this Policy in any one Occurrence, unless otherwise stated in this Paragraph G.

If two or more deductible amounts provided in this Policy apply to a single Occurrence, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in this Policy. However, if:

1. The Time Element deductible and another deductible apply to a single Occurrence, then the Company shall apply both deductibles to the Occurrence; and

2. Covered Loss or Damage by Flood arises out of a Named Storm, then the Company shall apply the Flood deductible set forth in Subparagraph G.1. or the Named Storm deductible set forth in Subparagraph G.3.b., whichever is greater.

## SECTION II – COVERED CAUSES OF LOSS

A. PERILS INSURED: This Policy insures against all risks of direct physical loss or damage to Insured Property, except as excluded.

B. PERILS EXCLUDED:

1. The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a. Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a Covered Cause of Loss. However:

      i. If fire not otherwise excluded ensues, the Company shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

      ii. This Policy does insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

   b. i. War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

         (1) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

         (2) By military, naval, or air forces; or

         (3) By an agent of any such government, power, authority, or force; or

      ii. Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

      iii. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such Occurrence, seizure or destruction;

      Including any consequence of Subparagraphs b.i., b.ii., or b.iii. above.

   c. Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured, or by any party to whom the property may have been entrusted (other than a carrier for hire).

   However, a willful act of destruction by an employee of the Insured, or others listed above without the knowledge of the Insured is covered.

EXHIBIT "A" PAGE 025

d. Asbestos material removal, except asbestos that itself incurs direct physical loss or damage caused by a **Defined Peril** at the Insured Location.

e. The actual, alleged or threatened release, discharge, escape or dispersal of **Pollutants or Contaminants**, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any Covered Cause of Loss under this Policy.

   However, this exclusion shall not apply to direct physical loss or damage to Insured Property arising out of seepage, contamination, or pollution caused by a **Defined Peril** at the Insured Location.

f. Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

g. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

h. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

i. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing damage.

j. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an **Occurrence** away from the **Location(s)** insured under this Policy, unless specifically provided herein and only to the extent provided herein.

k. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

l. i. Any functioning or malfunctioning of the Internet or similar facility, or of any intranet or private network or similar facility,

   ii. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

   iii. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

   This exclusion shall not apply to any ensuing physical damage, not otherwise excluded, which itself results from a **Defined Peril** at the Insured Location.

EXHIBIT "A" PAGE 026

m. Error or omission in **Electronic Data and Media** machine programming or instructions, including, loss attributable to program design constraints, networking compatibility and original business applications.

n. The failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

    i.   correctly recognize any date as its true calendar date;

    ii.  capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than its true calendar date; and/or

    iii. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

It is further understood that the Insurer will not pay for the repair of modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

It is further understood that the Insurer will not pay for damage or consequential loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in a. above.

Such Damage or Consequential Loss described in a., b., or c. above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This exclusion shall not apply to any subsequent damage or consequential loss, not otherwise excluded, which itself results from a **Defined Peril** at the Insured **Location**.

o. **Fungus, Mold(s), Mildew, Spores or Yeast**; or any spores or toxins created or produced by or emanating from such **Fungus, Mold(s), Mildew, Spores or Yeast**.

p. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

q. Loss or damage arising out of:

    i.   Building or any part of a building that is in danger of falling down or caving in,

    ii.  Any part of a building that has separated from another part of the building, or

    iii. A building or any part of a building that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

However, the Company does cover loss or damage arising out of **Collapse**.

EXHIBIT "A" PAGE 027

r.  **Equipment Breakdown** to vehicles or any equipment on vehicles, draglines, or excavation or construction equipment.

s.  Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in Section I. Subparagraph E.

2.  The Company does not insure for loss or damage caused by any of the following:

   a.  Delay, loss of market, or loss of use.

   b.  Indirect, remote, or consequential loss or damage.

   c.  Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

   d.  Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses, or any other similar act.

### SECTION III – INSURED PROPERTY

A.  INSURED PROPERTY:  Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof:

   1.  Real property, including new buildings and additions under construction at an Insured **Location**, and personal property in which the Insured has an insurable interest;

   2.  Improvements and betterments to buildings or structures in which the Insured has an insurable interest.  Such improvements and betterments shall be considered real property;

   3.  Personal property, other than motor vehicles, of officers and employees of the Insured;

   4.  Personal property of others in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against under this Policy;

   5.  Contractor's and vendor's interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage.  However, such interests will not extend to any time element coverage provided by this Policy.

B.  PROPERTY EXCLUDED: This Policy does not insure against loss or damage to:

   1.  Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones.  This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

   2.  **Land**, land values, any substance in or on **Land**, or any alteration to the natural condition of the **Land**;

   3.  Water, except water which is normally contained within any type of tank, piping system or other process equipment;

   4.  Standing timber, growing crops, plants, lawns, trees, shrubs, or animals;

   5.  Drainage systems, pavements or roadways;

   6.  Vehicles licensed for highway use, watercraft, aircraft, and railroad rolling stock;

PR8371 (02/12)                    Page 10 of 33

### EXHIBIT "A" PAGE 028

7. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8. Property in transit, except expressly as provided elsewhere in this Policy;

9. Underground mines or mining shafts, any mining equipment or mining property located below the surface of the ground;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft while on the launch pad, or after time of launch;

12. Dams, dikes, bridges, tunnels, reservoirs and canals;

13. Docks, piers and wharves;

14. Transmission and distribution lines of every type and description; except when located on the Insured premises or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire.

## SECTION IV – VALUATION

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraph B. through M., inclusive, below:  Adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence.  The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site.  Property that is not repaired or replaced within two (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss.

B. Stock in process will be valued at the cost of raw materials and labor expended plus the proper proportion of overhead charges.

C. Finished goods manufactured by the Insured will be valued at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

D. Raw materials, supplies and other merchandise not manufactured by the Insured will be valued at the replacement cost.

E. **Valuable Papers and Records** will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information.  If not replaced, the Company will only pay the blank value of the papers or records.

F. **Electronic Data and Media** will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information.  If not replaced, the Company will only pay the value of the blank media.

G. Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties, the replacement cost if replacement cost values have been reported to the Company and if actually replaced; otherwise the actual cash value with proper deduction

EXHIBIT "A" PAGE 029

for depreciation and obsolescence; (but not to exceed the cost to repair or replace the property with material of like kind and quality).

H.  Leasehold improvements and betterments will be valued as follows;

1.  If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments;

2.  If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost:

The Company will determine the proportionate value as follows:

a.  Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

b.  Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3.  Nothing if others pay for repairs or replacement.

I.  Fine Arts will be valued as follows:

1.  If there is no Agreed Value on file with the Company, then the lesser of:

a.  The cost to repair or replace the fine art, or

b.  The appraised value which will be determined as of the time of the loss.

2.  If there is an Agreed Value on file with the Company, then the Agreed Value on file with the Company.

J.  Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1.  Any collection expenses over and above the normal collection costs;

2.  Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3.  Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Company, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Company by the Insured up to the total amount of loss paid by this Company.  All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required

EXHIBIT "A" PAGE 030

to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

K. Property for Sale:  If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

1. The cost to repair or replace the damaged property, or

2. The price at which the property is offered for sale less the market value of the Land.

L. Property in Transit:  In case of loss, the basis of adjustment shall be:

1. Property shipped to or for the account of the Insured shall be valued at the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

2. Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder) is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight;

3. Property of others not under invoice shall be valued at the actual market value at the point of destination on the date of the Occurrence, less any charges saved which would have become due and payable upon delivery at destination; or

4. Property of the Insured not under invoice shall be valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

M. Contractor's equipment shall be valued at actual cash value, unless an agreed value applies.

With respect to Subparagraph A. through M., inclusive, unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss.

### SECTION V – TIME ELEMENT COVERAGE
### GROSS EARNINGS

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Insured Property.

A. ACTUAL LOSS SUSTAINED:  In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2. To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an Insured Location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith for the actual loss sustained of the following during the Period of Interruption:

EXHIBIT "A" PAGE 031

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, GROSS EARNINGS means:

   a. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

   b. For mercantile or non-manufacturing operations: The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

   c. Plus all other earnings derived from the operation of the business.

   In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

   In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

   There is no coverage for any portion of the Insured's Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in Section I.E.22. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

   a. normal operations resume, or

   b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

   whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2. In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

EXHIBIT "A" PAGE 032

    a.  To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

    b.  To replace physically damaged or destroyed mercantile stock necessary to resume operations.

    c.  To replace raw materials and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3.  For Property under construction:   The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion.  In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

1.  Required for restaffing or retraining employees, or

2.  Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above, or

3.  Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

C.  ADDITIONAL TIME ELEMENT COVERAGES

1.  EXTRA EXPENSE:  This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Insured Property utilized by the Insured.  Extra Expense means:

    a.  The reasonable and necessary Extra Expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

    b.  The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2.  RENTAL VALUE:  As respects Insured Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

Rental Value means the sum of:

    a.  The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

b.  The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

c.  The fair rental value of any portion of such property which is occupied by the Insured.

Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3.  ROYALTIES:  This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party.

4.  SOFT COSTS: For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during Period of Interruption (described in Section V., Paragraph B. above).  Such Soft Costs must be attributable to the loss.

The Company will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred.  Soft Costs means:

a.  The amount of actual interim or construction financing interest, including loan fees and other one time charges incurred to negotiate a new construction loan and/or extend the existing one;

b.  Realty taxes and ground rent if any;

c.  Advertising and promotional expenses;

d.  Cost of additional commissions;

e.  Architects, surveyors, legal, consulting engineers, or other fees not otherwise covered under this Policy;

f.  Project administration expense, but not including development fees;

g.  Insurance premiums; and

h.  Finder's fee refunds.

5.  CONTINGENT TIME ELEMENT:  If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

a.  wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured, or

b.  wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property.  The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the COVERAGE TERRITORY.

6. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY:  This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's real or personal property is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder.  Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown in Section I., Subparagraph E.6.  In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.6.

7. INGRESS & EGRESS:  This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder.  Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown in Section I., Subparagraph E.17.  In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.17.

8. EXTENDED PERIOD OF INDEMNITY:  Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

   a. the date on which the liability of the Company for loss or damage would otherwise terminate; or

   b. the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

   but in no event for a period of time exceeding the number of days specified in Section I., Subparagraph E.13, starting with later of a. or b. above.  This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.

With respect to Section V., Subparagraphs C.6. and C.7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Company will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

D. ADDITIONAL EXCLUSIONS: Section V – Time Element Coverage does not cover:

1. IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than direct physical loss or damage from a Covered Cause of Loss to which this coverage applies;

2. REMOTE LOSS –

   a. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order,

   b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature, or

EXHIBIT "A" PAGE 035

    c.  Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises,

Nor shall the Company be liable for any other consequential or remote loss, other than as specifically provided in this Section V;

3.  FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction;

4.  TRANSIT - Any loss resulting from loss or damage to property in transit.

### SECTION VI – ADDITIONAL COVERAGES

The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the **Earth Movement, Flood,** or **Named Storm** Sublimits of Liability provided herein, if applicable .

A.  ACCOUNTS RECEIVABLE:  This Policy covers any shortage in the collection of Accounts Receivable directly resulting from direct physical loss or damage insured by this Policy to Accounts Receivable Records.

The Company shall be liable for:

1.  Any collection expenses over and above the normal collection costs.

2.  Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected.

3.  Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the Insured on Accounts Receivable outstanding at the time of such loss or damage shall belong and be paid to the Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries exceeding that amount shall be for and belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall be liable only for the cost of blank Accounts Receivable Records and the time required, with the exercise of due diligence and dispatch, to reestablish and/or reconstruct such Accounts Receivable Records, but only so far as not covered by any other insurance.

This extension of coverage does not apply to loss due to:

1.  Bookkeeping, accounting or billing errors and omissions; and

2.  Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrong giving, taking, obtaining or withholding

of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL:  This Policy covers the necessary and reasonable expense of removal from the Insured Locations of debris of Insured Property remaining as a result of direct physical loss or damage insured against under this Policy when the Insured gives written notice of such direct physical loss or damage to the Company, no later than 180 days after the loss.  There is no liability for the expense of removing contaminated or polluted uninsured property, nor the Pollutant or Contaminant therein or thereon, whether or not the contamination results from an Insured event.

C. DEMOLITION AND INCREASED COST OF CONSTRUCTION:  In the event of direct physical loss or damage covered under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay:

1. Under Demolition Coverage A:  For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building;

2. Under Demolition Coverage B:  For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property;

3. Under Demolition Coverage C:  For the increased cost of repair or replacement of the damaged building and undamaged part of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building.  However, this Company shall not be liable for any such increased cost of construction unless the damaged building is actually rebuilt or replaced;

The Company shall not be liable for any cost of demolition or increased cost of replacement, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

D. ELECTRONIC DATA AND MEDIA:  This Policy is extended to cover direct physical loss or damage to Electronic Data and Media.

E. ERRORS OR OMISSIONS:  This Policy is extended to cover direct physical loss or damage at Locations within the Coverage Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this Policy solely due to;

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

    a. Include any Location of the Insured at the inception of the Policy; or

    b. Report any newly acquired location before the period of automatic coverage provided under this Policy for Newly acquired location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values after a covered loss.

EXHIBIT "A" PAGE 037

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Company when discovered.

There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or Miscellaneous Unnamed Locations provisions of this Policy.

F.  FINE ARTS:  This Policy is extended to cover direct physical loss or damage to fine arts. However, no coverage is provided for:

1.  Breakage of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture; antique jewelry or similar fragile articles, unless such breakage is caused by a Defined Peril at the Insured Location; or

2.  Loss or damage as a result of restoring, repairing, or retouching processes.

G.  FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES:  This Policy covers the following expenses resulting from a Covered Cause of Loss:

1.  Fire brigade charges and any extinguishing expenses which the Insured incurs;

2.  Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

H.  LEASEHOLD IMPROVEMENTS & BETTERMENTS: This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the Insured tenant or lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an Insured Location.  No sublimit of liability applies to this additional coverage, but in no event, will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

I.  LEASEHOLD INTEREST:  If Insured Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured Property is located, then this Policy is extended to cover The Interest of the Insured as Lessee or The Interest of the Insured as Lessor, whichever is applicable, but only for the first three months succeeding the date of the loss and the Net Lease Interest shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1.  The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

2.  Improvements and betterments to real property which are not covered under any other section of this Policy; and

3.  The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

EXHIBIT "A" PAGE 038

Definitions:  The following terms, wherever used in this section shall mean:

1.  The Interest of the Insured as Lessee is defined as:

   a.  the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

   b.  the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2.  The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3.  Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this additional coverage.

J.  LIMITED POLLUTION COVERAGE:  This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of **Pollutants or Contaminants** from **Land** or water at an Insured Location when such **Land** or water is contaminated or polluted due to a Covered Cause of Loss at the Insured **Location**. There will be no coverage unless such expenses are reported to the Company within 180 days after the date of such Covered Cause of Loss.

K.  NEWLY ACQUIRED PROPERTY: This Policy covers real or personal property of the type insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy.  Coverage under this additional coverage ceases at the earlier of the following dates:

   1.  Ninety (90) days from the date of acquisition or lease of such property or such other number of days shown in Section I for Newly Acquired Property, if applicable, or

   2.  When the newly acquired location is bound by the Company; or

   3.  The Company notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Miscellaneous Unnamed Locations provisions of this Policy.

L.  PAIRS OR SETS:  If two or more components or parts are necessary for a whole or complete product, then this Policy covers reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

No sublimit of liability applies to this additional coverage.

PR8371 (02/12)                       Page 21 of 33

M. PROFESSIONAL FEES:  This Policy is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the insured's business in order to determine the amount of loss payable under this policy.  This Policy is extended to include reasonable and necessary fees charged by the Property Manager for handling the claim.

There shall be no coverage under this policy for expenses incurred by the Insured in utilizing the services of Attorneys, Public Adjusters, Insurance Agents or Brokers, or any of their subsidiary, related or associated entities.  This Policy also excludes any fees or costs for consultation on coverage or negotiation of claims, and the costs or expenses of overhead or operating expenses of any Insured, including salaries of such Insured's employees.

N. PROPERTY REMOVED FROM INSURED LOCATIONS:  This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any **Location** within the Coverage Territory when removed from the Insured **Locations** for the purpose of being repaired or serviced, excluding:

   1. Personal property insured under another Policy or floater;

   2. Personal property excluded under this Policy; or

   3. Personal property removed from the Insured **Locations** for normal storage or processing or preparation for sale or delivery.

O. SERVICE INTERRUPTION: This Policy is extended to cover physical loss or damage to Insured Property and/or Time Element Coverage arising from a Covered Cause of Loss to: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, all situated outside the Insured Locations.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I., Subparagraph E.24.  In such case, the loss shall be measured from date and time of the loss.  With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines is restored.

The Sublimit set forth in Section I., Subparagraph E.24. applies to all loss or damage to Insured Property and Time Element Coverage combined arising out of one Service Interruption.  None of the Additional Time Element Coverages set forth in Section V., Paragraph C. apply to the Time Element Coverage provided herein.

P. SPOILAGE: This Policy is extended to cover spoilage as a direct result of a Covered Cause of Loss.  The Company shall be liable for direct physical loss or damage to:

   1. **Perishable goods** due to spoilage; or

   2. **Perishable goods** due to contamination from the release of refrigerant including, but not limited to, ammonia.

If the Insured is unable to replace the **perishable goods** before its anticipated sale, payment will be determined on the basis of the sales price of the **perishable goods** at the time of the loss, less discounts and expenses that otherwise would have applied.  Otherwise payment will be determined in accordance with Section IV – Valuation of this Policy.

EXHIBIT "A" PAGE 040

Perishable goods means personal property:

1. Maintained under controlled conditions for its preservation, and

2. Susceptible to loss or damage if the controlled conditions change.

Q. TRANSIT: This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1. Personal property shipped to customers on F.O.B., C & F, or similar terms. The Insured's contingent interest in such shipments is admitted.

2. The interest of the Insured in, and legal liability for personal property of others in the actual or constructive custody of the Insured.

3. Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage;

1. Samples in the custody of salespersons or selling agents.

2. Property insured under import or export ocean cargo policies.

3. Waterborne shipments via the Panama Canal or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

4. Shipments made by air unless via regularly scheduled airlines.

5. Property shipped by mail.

6. Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

7. Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts. The Insured may waive subrogation against railroads under

EXHIBIT "A" PAGE 041

sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

R. **VALUABLE PAPERS AND RECORDS:** This Policy is extended to cover **Valuable Papers and Records.**

## SECTION VII – CONDITIONS

A. **ABANDONMENT:** There can be no abandonment to the Company of any property.

B. **ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE:** Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations, and duties under this Policy. Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

C. **APPRAISAL:** If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the Policy and the Company's right to deny the claim.

D. **ASSIGNED ADJUSTER:** It is hereby agreed that the following shall be designated as the ACCOUNT CLAIM ADJUSTER for all claims reported under this policy provided that he/she agrees to be subject to and fully comply with the Lexington Insurance Company's "Claim Handling Guidelines for Independent Adjusters Protocol". The ACCOUNT CLAIM ADJUSTER may not re-assign any claim(s) without the prior approval of the Company.

Lexington Insurance Company reserves the right to associate a Lexington/AIG staff adjuster with the ACCOUNT CLAIM ADJUSTER as respects any claim or claims. Lexington retains the right to terminate the below named ACCOUNT CLAIM ADJUSTER for lack of compliance with the aforementioned Guidelines Protocol or for lack of performance at the discretion of the company. In such event, or in the event that the below named ACCOUNT CLAIM ADJUSTER becomes unwilling or unable to perform, a replacement ACCOUNT CLAIM ADJUSTER will be selected by the mutual agreement of the Company and Named Insured.

Adjuster Name:

Adjusting Firm

EXHIBIT "A" PAGE 042

E. ASSIGNMENT: The Insured may not be assign this Policy without the Company's prior written consent.

F. BRANDS AND LABELS: If branded or labeled merchandise covered by this Policy is physically damaged and the Company elects to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

G. CANCELLATION:

1. This Policy can be canceled by the First Named Insured by providing the Company with:

   a. An advanced written request for cancellation stating when the cancellation shall be effective, and

   b. The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2. This Policy may be canceled by the Company by giving to the Insured at least ninety (90) days written notice of cancellation or in the case of non-payment of premium, at least ten (10) days' written notice of cancellation.   Such notice may be accompanied with the unearned premium, or if not included, the Company shall return the unearned premium upon demand by the First Named Insured.

3. The cancellation will be effective even if the Company has not made or offered a refund.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4. If this Policy is canceled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, subject to the Minimum Earned Premium shown on the Declarations. The cancellation will be effective even if the Company has not made or offered a refund.

H. CONTROL OF DAMAGED MERCHANDISE: The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption.  No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I. CURRENCY:   Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the country in which the property is located.  However, if the risk is located in a country other than the United States or Canada, then the Limits of Liability, Deductibles and Premiums specified shall be in United States funds.

J. DIVISIBLE CONTRACT: Subject to Condition L., if the Locations described in this Policy include two or more buildings or the contents of two or more buildings, the breach of any condition of this Policy in respect to any one or more of the buildings insured or containing the Insured Property, shall not prejudice the right to recover for direct physical loss or damage occurring in

any building insured or containing the Insured Property where, at the time of such loss or damage, a breach of condition does not exist.

K. INSPECTION AND AUDIT: The Company, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Company, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Company may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L. MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

M. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE:  In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible.  Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

N. PROTECTION AND PRESERVATION OF PROPERTY:

In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this Policy, but shall be subject to the applicable deductible, sublimit of liability and the Policy Limit.

O. REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

P. REQUIREMENTS IN CASE OF LOSS:  The Insured shall:

1. Give prompt written notice of any loss or damage to the Company,

2. Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority,

3. Protect the property from further loss or damage,

4. Separate the damaged and undamaged personal property,

5. Maintain such property in the best possible order, and

6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,

7. Furnish all other documents or insurance policies that the Company may reasonably require,

EXHIBIT "A" PAGE 044

8. Allow the Company to access and inspect any of the damaged or undamaged property, and

9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1. The time and origin of the loss,

2. The interest of the Insured and of all others in the property,

3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon,

4. All other contracts of insurance, whether collectible or not, covering any of said property, and

5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

Q. REVIEW OF VALUES: The Insured shall provide this Company at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all Insured Locations.

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**. The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an Actual Cash Value basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. Time Element values (if applicable) shall be forwarded in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to the Company. Receipt of said Statement of Values shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with the Company, or attached to this Policy.

R. SALVAGE AND RECOVERIES: All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

S. SERVICE OF SUIT: In the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process

PR8371 (02/12)                    Page 27 of 33

in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110 or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by the Insured or on the Insured's behalf or any beneficiary hereunder arising out of this Policy of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

T. SETTLEMENT OF CLAIMS: The amount of loss for which the Company may be liable shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the Company and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Company or an amount is determined by binding Appraisal in accordance with the provisions of this Policy.

The Company shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention so to do within sixty (60) days after receipt of the proof of loss herein required.

U. SUBROGATION: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials;

2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

V. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twenty four (24) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

W. SUSPENSION: Upon the discovery of a dangerous condition with respect to **Equipment Breakdown** to any Insured Property under this Policy, any representative of the Company may immediately suspend the insurance against loss from an Accident to such property or part

EXHIBIT "A" PAGE 046

thereof by giving written notice mailed or delivered to the Insured at the address of the Insured as specified in Section I, or at the location of such property. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this Policy. The Insured shall be allowed the return of the unearned portion of the premium paid for such suspended insurance, pro-rata for the period of suspension.

X. TERRITORIAL LIMITATIONS:   Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Y. TITLES OF PARAGRAPHS: The titles of the various paragraphs of this form (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

Z. VACANCY: The Insured has permission to cease business operations or to have any insured building remain vacant or unoccupied, provided that, fire protection, security and alarm services are maintained and written notice is given to the Company prior to the one-hundred twentieth (120th) consecutive day of cessation of business operations, vacancy or lack of occupancy. The insured building is considered vacant or unoccupied when it does not contain adequate Insured Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations.

### SECTION VIII –POLICY DEFINITIONS

A. Aircraft or Vehicle Impact means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

B. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

C. Defined Peril means Fire; Lightning; Explosion; Windstorm; Hail; Smoke; Aircraft or Vehicle Impact; Riot, Strike or Civil Commotion; Vandalism and Malicious Mischief; Collapse (unless otherwise excluded under Section II – Perils Excluded, Subparagraph B.1.q.); or Leakage From Fire Protection Equipment.

D. Earth Movement means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;

2. Landslide, including any earth sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse, subsidence;

and includes tsunami.

E. **Earth Movement Counties:** As referenced in this Policy, designated Earthquake Zones shall be defined as all Locations situated within the States or Counties as specified below;

   1. **Pacific Northwest Earthquake Zone Counties**

      **Washington:** Clallum, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom

   2. **New Madrid Earthquake Zone Counties**

      **Arkansas:** Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett

      **Illinois:** Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St Clair, Washington, Clinton, Bond Madison, Jefferson

      **Indiana:** Posey, Vanderburgh, Gibson, Warrick, Pike

      **Kentucky:** Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway

      **Mississippi:** Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar

      **Missouri:** Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St Francois, St Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne,, Reynolds, Madison, St Genevieve and Perry

      **Tennessee:** Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman

F. **Electronic Data and Media** means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

G. **Equipment Breakdown** means direct physical damage to Insured Property that is the direct result of an Accident. Accident means a fortuitous event that causes direct physical loss or damage to Insured Property. The event must be one of the following:

   1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

   4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment

H. **Explosion:** Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured;

   1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

   2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

   3. Combustion gas turbines;

   4. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

   Explosion will include loss or damage arising or resulting from;

   1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

   2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

   The following are not explosions within the intent or meaning of this definition;

   1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

   2. Bursting or rupture caused by freezing;

   3. Sonic shock waves, generally known as Sonic Boom;

   4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

I. **Fine Arts** means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

   Fine Arts does not mean and does not include any item which would qualify as **Valuable Papers and Records.**

J. **Flood** means, whether natural or manmade, Flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. A tsunami shall not be considered a **Flood.**

K. **Fungus, Mold(S), Mildew, Spores Or Yeast:**

   Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

   Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

L. **Land** means land except land for which values are reported and premiums are charged hereunder, such as dikes, levees, and other surface containment structures. Surface containment structures are not land to a depth of six inches below such surface containment structures.

M. **Leakage From Fire Protection Equipment** means direct physical loss or damage from:

1. Water or other substances discharged from within any part of the **Fire Protection Equipment** for the Insured **Location** or for any adjoining **Locations**;

2. Collapse or fall of tanks forming a part of the **Fire Protection Equipment** or the component parts or supports of such tanks.

The term **Fire Protection Equipment** includes tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include;

1. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2. Any underground water mains or appurtenances located outside of the Insured **Location** and forming a part of the public water distribution system;

3. Any pond or reservoir in which the water is impounded by a dam.

N. **Location** means the location as specified in the Statement of Values, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear **Land** space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

O. **Miscellaneous Unnamed Location(s)** means a location that has not been included in the Statement of Values on file with the Company and has not been reported to the Company as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

P. **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The occurrence must occur during the policy period.

If more than one event for **Windstorm, Hail, Named Storm, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, Earth Movement, Flood** or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single **Occurrence.** When filing proof of loss, the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

Q. **Pollutants or Contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its

EXHIBIT "A" PAGE 050

release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

R. **Riot, Strike or Civil Commotion** means riot and civil commotion including;

    1. Acts of striking employees while occupying the Insured Location; and

    2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

S. **Smoke** means loss or damage ensuing from a sudden and accidental release of **Smoke**. The peril of **Smoke** does not include loss or damage caused by **Smoke** from agricultural smudging or industrial operations.

T. **Valuable Papers and Records** means documents that are written, printed, or otherwise inscribed. These include:

    1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

    2. Legal and financial agreements such as deeds and mortgages;

    3. Addressograph plates; and

    4. Any electrically produced data such as printouts, punched cards, tapes or discs.

    **Valuable Papers and Records** does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

    **Valuable Papers and Records** does not mean and does not include any item which would qualify as Fine Arts.

U. **Vandalism and Malicious Mischief** means willful and malicious damage to, or destruction of, Insured Property. **Vandalism and Malicious Mischief** does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

V. **Windstorm or Hail:** Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for:

    1. Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

    2. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

    3. Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

EXHIBIT "A" PAGE 051

ENDORSEMENT #  001

This endorsement, effective 12:01 AM 07/14/2015

Forms a part of policy no.:  012944707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

---

### LENDER'S LOSS PAYEE & ADDITIONAL NAMED INSURED ENDORSEMENT

It is agreed that the following is added as a Lender's Loss Payee and Additional Insured.

Name/Address:    Bank of America, N.A. as Administrative Agent
                 333 South Hope Street, 13th Floor
                 Mail Code: CA9-193-13-33
                 Los Angeles, CA 90071 USA

30 Day Notice of Cancellation (except 10 for nonpayment of premium)

Nothing herein contained shall be held to vary, alter, waive or change any of the Insuring Agreements, Exclusions, Conditions, or Declarations of the Policy, except as hereinabove set forth.

*Erik P. Nill*

LEXDOC021
LX0404

_____
Authorized Representative OR
Countersignature (In states where applicable)

EXHIBIT "A" PAGE 052

ENDORSEMENT #  002

This endorsement, effective 12:01 AM 07/14/2015

Forms a part of policy no.:  012944707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON INSURANCE COMPANY

---

### LENDER'S LOSS PAYEE ENDORSEMENT

**Please consider Endorsement # 001 deleted in its entirety and replaced with the following:**

It is agreed that the following is to the Lender's Loss Payee and Additional Insured:

Location:          Identify address of the Insured that the M, LP, or AI an interest in

Name/Address:    **Bank of America, N.A. as collateral Agent**
                 **333 South Hope Street, 13th Floor**
                 **Mail Code: CA9-193-13-33**
                 **Los Angeles, CA 90071 USA**

30 Day Notice of Cancellation (except 10 for nonpayment of premium)


Nothing herein contained shall be held to vary, alter, waive or change any of the Insuring
Agreements, Exclusions, Conditions, or Declarations of the Policy, except as hereinabove set forth.


*Erik P. Nll*

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX0404

EXHIBIT "A" PAGE 053

ENDORSEMENT #  003

This endorsement, effective 12:01 AM 07/14/2015

Forms a part of policy no.:  012944707

Issued to: RYERSON HOLDING CORPORATION

By: LEXINGTON  INSURANCE COMPANY

---

### LENDER'S LOSS PAYEE ENDORSEMENT

**Please consider Endorsement # 002 deleted in its entirety and replaced with the following:**

It is agreed that the following is to the Lender's Loss Payee and Additional Insured:

Name/Address:     Bank of America, N.A. as Collateral Agent
                  333 South Hope Street, 13th Floor
                   Mail Code: CA9-193-13-33
                  Los Angeles, CA 90071 USA

30 Day Notice of Cancellation (except 10 for nonpayment of premium)


Nothing herein contained shall be held to vary, alter, waive or change any of the Insuring
Agreements, Exclusions, Conditions, or Declarations of the Policy, except as hereinabove set forth.

_Erik P. M__

_____

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX0404

EXHIBIT "A" PAGE 054

ENDORSEMENT #004

This endorsement, effective 12:01 AM, 08/03/2015
Forms a part of Policy No.: 012944707
Issued to: RYERSON HOLDING CORPORATION
By: LEXINGTON INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

In consideration of $5,993 additional premium in effected, it is hereby agreed that the following locations are added:

- Chattanooga  2726 Kanasita Drive, Hixson TN 37343 / South-East / Lease
- Chattanooga  2714 Kanasita Drive, Hixson TN 37343 / South-East / Lease
- Gallatin  718 Airport Road, Gallatin TN 37066 / South-East / Lease

It is also agreed that Newly Acquired sublimit is increased to $15,000,000.

Nothing herein contained shall be held to vary, alter, waive or change any of the Insuring Agreements, Exclusions, Conditions, or Declarations of the Policy, except as hereinabove set forth.

_____
Authorized Representative

©2015 American International Group, Inc.
All Right Reserved.

EXHIBIT "A" PAGE 055

CV52456

CAUSE NO. CV52456

| | | |
|---|---|---|
| LEECO ENERGY & INVESTEMENTS, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | MIDLAND COUNTY, TEXAS |
| | § | |
| LEXINGTON INSURANCE COMPANY, | § | |
| *Defendants* | § | 238TH JUDICIAL DISTRICT |

## **DEFENDANT'S ORIGINAL ANSWER**

Defendant Lexington Insurance Company files this original answer, as follows:

1.      Subject to such stipulations or admissions that may hereafter be made, Defendant enters a general denial, pursuant to Rule 92 of the Texas Rules of Civil Procedure, thereby denying each and every, all and singular, material allegation contained in the Plaintiff's Original Petition and demand strict proof thereof as required by the laws of this State. TEX. R. CIV. P. 92.

2.      Defendant asserts that all conditions precedent for Plaintiff's filing suit and recovery has not occurred.

3.      Defendant reserves the right to amend their answer as more facts and evidence become available.

WHEREFORE, Defendant Lexington Insurance Company respectfully requests that the relief sought in Plaintiff's Original Petition be denied, Plaintiff takes nothing, and Defendant goes hence without delay, with costs and all such other and further relief to which it may show itself justly entitled to receive.

Respectfully submitted,

**EGGLESTON & BRISCOE, LLP**
333 Clay Street, Suite 4800
Houston, Texas 77002
(713) 659-5100 – Telephone
(713) 951-9920 – Facsimile


By:   /s/ *Tracy Jackson Cowart*
        Tracy Jackson Cowart
        State Bar No. 00789398
        tjc@egglestonbriscoe.com

ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

I certify that on August 15, 2016, a true and correct copy of the foregoing was forwarded to all counsel of record, including those listed below, via any proper method of service allowed by the Texas Rules of Civil Procedure, the Local Rules for this Court, or any method of service agreed to by the parties pursuant to Texas Rule of Civil Procedure 11.

Stewart McKeehan
Stewart McAKeehan Attorney at Law, P.C.
617 E. 7th St.
Odessa, Texas 79761
(432) 332-3161 – Fax
stewart@smlawpc.com

ATTORNEY FOR PLAINTIFF


     /s/ *Tracy Jackson Cowart*
     Tracy Jackson Cowart